**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Oswalt,<br><br>            Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>           Defendant. | No. CV-20-00556-TUC-JGZ<br><br>**ORDER** |

On June 30, 2022, Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation (R&R) recommending that the Court vacate the Commissioner's final decision denying Plaintiff Jennifer Oswalt's application for Social Security disability benefits and remand the case for further administrative proceedings. (Doc. 25.) On July 13, 2022, the Commissioner filed an Objection to the Report and Recommendation. (Doc. 27.) Oswalt timely responded. (Doc. 28.) After reviewing the Report and Recommendation and considering the arguments raised in the Commissioner's Objection, the Court will overrule the Objection and adopt Judge Ferraro's Recommendation.

**STANDARD OF REVIEW**

When reviewing a Magistrate Judge's R&R, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). District courts are

not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Further, a party is not entitled as of right to *de novo* review of evidence or arguments which are raised for the first time in an objection to the R&R, and the Court's decision to consider newly-raised arguments is discretionary. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002); *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000).

## BACKGROUND

The parties do not object to the Magistrate Judge's summary of the factual and procedural background. (Doc. 25 at 1–6.) Therefore, the Court does not restate the facts here and instead includes the relevant facts in its discussion of the issues presented.

## DISCUSSION

The Commissioner objects to the Magistrate Judge's conclusions that the Administrative Law Judge (ALJ) erred in (1) evaluating the objective medical evidence concerning Oswalt's narcolepsy and (2) discounting Oswalt's subjective complaints about her narcolepsy-related symptoms. (Doc. 27.) The Commissioner argues that the ALJ did not err in evaluating the objective medical evidence and reasonably found that Oswalt was less limited from narcolepsy than she alleged. (*Id.* at 3.) The Commissioner asserts that the ALJ did not err in discounting Oswalt's symptom testimony because it was inconsistent with several objective factors. (*Id.*) The Court will address the Objections in turn.[1]

### I. ALJ's Analysis of Objective Medical Evidence

The Magistrate Judge concluded that the ALJ erred in her analysis of the objective medical evidence when she reasoned that Oswalt's normal MRI, EEGs and alertness at examinations were inconsistent with the alleged severity of Oswalt's narcolepsy. (Doc. 25 at 9.) The R&R notes that the ALJ's analysis was directly contrary to the Evaluation of Narcolepsy guidance provided in Program Operations Manual System (POMS) DI 24580.005, without any explanation as to the difference.[2] (*Id.*) The guidance provides that:

---

[1] The Court acknowledges the appropriate standard of review of the Commissioner's final decision is that set forth in the R&R. (Doc. 25 at 6–7.)
[2] POMS do not create a judicially enforced duty on either courts or ALJs; they are agency

"There are no physical abnormalities in narcolepsy, and with the exception of sleep studies, laboratory studies will be normal. . . . Once awakened, the narcoleptic patient is alert. . . . It is not necessary to obtain an electroencephalogram (EEG) in narcolepsy cases. A routine EEG is usually normal." POMS DI 24580.005(B)–(C).

The Commissioner argues that "no error under the POMS occurred" because the guidance "simply explains *how* objective medical findings typically appear in narcolepsy cases," and other factors are relevant to the determination of severity. (Doc. 27 at 2.) The Commissioner asserts that the ALJ agreed that narcolepsy was one of Oswalt's medically determinable severe impairments, then addressed the impact of narcolepsy based on the sum total of the evidence, reasonably finding Oswalt less limited from narcolepsy than alleged. (*Id.* at 2–3.)

The Commissioner's argument is unavailing. While correct that the POMS explains how objective medical findings typically appear, the Commissioner does not address the fact that the ALJ relied on test results consistent with narcolepsy as evidence that Oswalt's narcolepsy was not disabling. The ALJ stated "*despite* having normal EEG studies, the claimant continued to endorse losing blocks of time and a decline in memory. . . . Similar to previous diagnostic tests, the MRI came back normal. . . . This undermines the persuasiveness of claimant's subjective allegations." (AR 21, emphasis added.)[3] Normal MRI and EEG results are expected in a patient with narcolepsy, and the ALJ provided no justification for departing from the POMS guidance to conclude that Oswalt's test results undermined her allegations. Additionally, the Commissioner fails to address the fact that one of the "normal" EEGs that the ALJ relied on showed two "brief jerking movements," consistent with hypnopompic jerk or sleep related movements. (AR 21, 855–56.)

Further the ALJ reasoned that Oswalt's reported fatigue and excessive daytime somnolence were "inconsistent with objective findings where treating physicians and

---

interpretations entitled to respect when they have the power to persuade. *Lockwood v. Comm'r Social Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010).
[3] The Administrative Record (AR) is found at Doc. 18. The Court cites to documents contained in the Record using the bates numbers found on the bottom right corner of the documents.

medical staff have routinely described the claimant's mentation as alert and oriented during examinations." (AR 21.) The Commissioner argues that "the ALJ could reasonably consider the objective findings of alertness, orientation, and good attention/concentration" as a factor inconsistent with the alleged severity of Oswalt's narcolepsy. However, it is not reasonable to conclude that a patient's alertness during a brief doctor's appointment or exam is evidence that narcolepsy is not present or severe, especially when the POMS guidance explains that an awake narcoleptic patient will present as alert. Again, the ALJ provided no justification for interpreting the objective medical evidence contrary to the POMS guidance.

In sum, the Court agrees with the Magistrate Judge that the ALJ erred in concluding that Oswalt's MRI, EEGs, and alertness at exams undermined the severity of her narcolepsy. Thus, the ALJs factual findings interpreting the objective medical evidence are not supported by substantial evidence. This error was not harmless, because error regarding the severity of Oswalt's narcolepsy was material to the ALJ's finding that her narcolepsy was not disabling. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

## II.     ALJ's Decision to Discount Oswalt's Symptom Testimony

The Magistrate Judge concluded that the ALJ erred by failing to provide specific, clear, and convincing reasons for disregarding Oswalt's symptom testimony. (Doc. 25 at 12.) The Commissioner argues that the ALJ's analysis complied with regulations in 20 C.F.R. § 404.1529(c) and appropriately relied on reports of improvement with medication, alertness, lack of corroboration from Oswalt's fiancé, Oswalt's driving, and her daily activities. (Doc. 27 at 3.) The Commissioner asserts that "all of these factors were inconsistent with the degree of debilitation Plaintiff alleged," and that any one is a sufficient independent basis for discounting Oswalt's testimony. (*Id.*)

A two-step analysis is required to discredit a claimant's testimony; first, the ALJ must determine if the claimant presents objective medical evidence of an impairment that could reasonably be expected to produce the alleged symptoms, though objective evidence of the symptoms or their severity is not required. *Trevizo v. Berryhill*, 871 F.3d 664, 678

(9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Next, if there is no evidence of malingering, the ALJ must offer specific, clear, and convincing reasons for rejecting the claimant's symptom testimony by pointing to specific facts in the record; general findings are insufficient. *Garrison*, 759 F.3d at 1014–15; *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir 2014).

The Magistrate Judge thoroughly addressed the Commissioner's arguments in the R&R, explaining how each factor was not a clear and convincing reason for rejecting Oswalt's testimony about the severity of her symptoms. (Doc. 25 at 11–12.) The Magistrate Judge stated that the ALJ pointed to Oswalt's improvement with medication but did not acknowledge that its effects would only last 3–4 hours and a second dose would cause a migraine "98% of the time." (AR 46–48.) As discussed above, Oswalt's alertness for the limited duration of a medical exam is not in conflict with her testimony. The Magistrate Judge stated that the ALJ's reliance on the fact that Oswalt's fiancé had not witnessed any unresponsive staring spells was insufficient because it was unclear how much time he had spent with Oswalt in the month he had been with her. The Magistrate Judge noted that the ALJ placed weight on the fact that Oswalt held an active driver's license and "continues to drive," as evidence that her symptoms were not debilitating, despite Oswalt's testimony that she only drove when "absolutely necessary," some two or three times a month and would pull over when she received an "overpowering" warning that she was about to fall asleep. (AR 21, 47–48.) Finally, the Magistrate Judge concluded that Oswalt's daily activities are not inconsistent with the alleged severity of Oswalt's symptoms because the activities build in rest and allow for Oswalt to fall asleep as needed. (AR 22–23, 51.) *See Garrison*, 759 F.3d at 1016 ("ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

The Court agrees with the Magistrate Judge's analysis and conclusions that none of the factors relied on by the ALJ provided a sufficient basis for rejecting Oswalt's testimony.

Thus, the ALJ erred by failing to provide specific, clear, and convincing reasons for discrediting Oswalt's symptom testimony. The Court finds that this error was not harmless because if the ALJ were to fully credit Plaintiff's testimony as to the severity of her symptoms, the final decision could be different.

Accordingly, the Court will overrule the Commissioner's Objection and adopt the R&R.

**IT IS HEREBY ORDERED:**

1. The Commissioner's Objection (Doc. 27) is **OVERRULED**.
2. Magistrate Judge Ferraro's Report and Recommendation (Doc. 25) is **ACCEPTED** and **ADOPTED**.
3. The ALJ's Decision, which became the Commissioner's Final Decision, is **REVERSED**.
4. This case is **REMANDED** to the Social Security Commissioner. On remand, the Appeals Council shall remand this matter to the ALJ. The ALJ shall take any action necessary for resolution of this matter, including conducting any necessary hearings and taking any new evidence. After any necessary proceedings, the ALJ shall issue a new decision consistent with this Order.
5. The Clerk of Court shall enter judgment accordingly and close its file in this action.

Dated this 12th day of September, 2022.

_____
Honorable Jennifer G. Zipps
United States District Judge